J-S12017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.N.B., A MINOR | : :  : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.B., FATHER | : : : : : : | |
| | : | No. 2331 EDA 2023 |

Appeal from the Decree Entered August 15, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-AP-0000447-2022

BEFORE: DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.: **FILED MAY 30, 2024**

J.B. ("Father") appeals from the decree involuntarily terminating his parental rights to his daughter, J.N.B. ("Child"), born in August 2012.[1] Upon review, we affirm the termination decree.

We glean the following relevant factual and procedural history of this case from the certified record. J.N.B.'s family has a long-standing history with the Philadelphia Department of Human Services ("DHS"). Child was first adjudicated dependent in December 2015, although Child remained in Mother's custody. The court terminated supervision and discharged DHS's dependency petition in August 2016. **See** DHS Exhibit 3. The court again

---

[1] By separate decree, the trial court involuntarily terminated the parental rights of Child's mother, N.B. ("Mother"). Mother filed notices of appeal from this decree, and the order changing Child's permanency goal from reunification to adoption. These appeals are docketed at 2329 & 2330 EDA 2023 and are addressed by separate memorandum.

adjudicated Child dependent in February 2018, and placed Child in foster care. *See id*.; N.T., 6/22/23, at 16-17. Child was returned to Mother's custody in February 2019, but remained under DHS supervision until April 2021.[2] *See* DHS Exhibit 3, N.T., 6/22/23, at 39. DHS's involvement relating to Child's older siblings concerned truancy and sexual abuse; its involvement relating to Child concerned severe parental neglect, Child's exposure to drugs and sexual abuse, and Child's truancy. *See* DHS Exhibit 3; N.T., 6/22/23, at 16-17.[3]

In April 2021, the trial court again placed Child in foster care, and Child has remained there.[4] *See* DHS Exhibits 3 through 9. The court established a permanency goal of return to parent or guardian. *See* DHS Exhibit 3.

In furtherance of reunification, DHS and/or the Community Umbrella Agency ("CUA") issued a single case plan ("SCP"). *See* N.T., 6/22/23, at 28-30. Father knew his plan's objectives focused on his drug and alcohol issues, mental health problems, keeping agencies informed of his whereabouts, and cooperating with service providers. *See id*. These objectives remained

---

[2] DHS obtained protective custody of Child and placed her in foster care for a few days in October 2020 when Mother was incarcerated. *See* Order of Protective Custody, 10/22/20.

[3] None of Child's siblings are subjects of the within proceedings or appeals.

[4] At the time of the subject hearings, Child had been placed in her current treatment foster care home for approximately two years. *See* N.T., 6/22/23, at 26.

consistent throughout the pendency of the dependency proceedings. **See id**.; DHS Exhibit 3.

Father later testified he participated in the dependency proceedings and completed some required activities before he was incarcerated in December 2019. **See** N.T., 6/22/23, at 66.[5] However, Father has not been compliant with his SCP objectives from the time of his 2019 incarceration and even after his November 2022 release. **See** DHS Exhibit 3; N.T., 6/22/23, at 57, 64, 66. Father has not had any contact with Child since December 2019, and the court suspended his visitation in November 2022. **See** N.T., 6/22/23, at 30, 60.

In July 2022, DHS filed a petition to change Child's concurrent permanency goal from reunification to adoption, and a petition to involuntarily terminate Father's and Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The court held two days of hearings on DHS's petitions. Child, then almost eleven years old, was represented by a separate guardian *ad litem* ("GAL") and legal counsel.[6] **See** 23 Pa.C.S.A.

---

[5] The parties disputed the extent of Father's involvement with Child prior to her February 2018 adjudication of dependency. **See** N.T., 6/22/23, at 27-28, 57-58, 62.

[6] Both the GAL and legal counsel argued in favor of termination and goal change at the conclusion of the August 15, 2023, hearing. The GAL additionally submitted a brief to this Court in support of termination of Father's parental rights.

§ 2313(a). Father, represented by counsel, testified at the hearing. **See** N.T., 6/22/23, at 2, 53-69.

On the first day of the hearing, the Agency presented the testimony of CUA case manager Tamika Palmer ("Ms. Palmer"), who testified regarding Father's failure to comply with his SCP objectives. **See** N.T., 6/22/23, at 28-30, 32-33, 42. Child's current therapist, Alexandra Ciarrocchi ("Ms. Ciarrocchi"), a trauma clinician with Children's Crisis Treatment Center, testified since she began seeing Child in January 2023, Child has not expressed any desire to have contact with Father, and, in fact, is afraid of him. **See id**. at 46.

On the second day of the hearing, the court interviewed Child *in camera* in the presence of the parties' counsel. Additionally, Emily Cherniack, Esquire ("Ms. Cherniack"), counsel for Child, presented a report on her discussions with Child. **See** N.T., 8/15/23, at 4-5 (unnumbered).

By decree, the trial court involuntarily terminated Father's parental rights to Child.[7] By separate order dated and entered the same day, the court also changed Child's permanency goal from reunification to adoption.[8]

Father, through court-appointed counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to

---

[7] The court also terminated Mother's parental rights.

[8] Father does not appeal the goal change order.

- 4 -

Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a responsive Rule 1925(a) opinion.

On appeal, Father raises the following issue for our review:

Did the trial court err as a matter of law or abuse its discretion in terminating Father's parental rights when the evidence presented clearly and convincingly supported Permanent Legal Custody ("PLC") as the most appropriate goal for [] Child given her bond with Mother[,] together with [Child's] contradictory statements of wanting to be adopted, while also wishing to visit with [] Mother[,] as well as expressing a preference to live with [] Mother?

Father's Brief at 3 (suggested answer omitted).[9]

Our standard of review is as follows:

[I]n cases involving involuntary termination of parental rights[, our review] is limited to determining whether the trial court's determination is supported by competent evidence. When applying this standard of review, an appellate court must accept the findings of fact and credibility determinations of the trial court if they are supported by evidence of record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion. An abuse of

---

[9] Father's issue and argument seem more focused on a claim the trial court erred in terminating Mother's parental rights than his. **See** Father's Brief at 3, 6-9. Moreover, Father's brief does not comply with Pa.R.A.P. 2116(a) ("[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."), Pa.R.A.P. 2118 ("[t]he summary of argument shall be a concise, but accurate, summary of the arguments presented in support of the issues in the statement of questions involved."), and Pa.R.A.P. 2119(a) ("[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). However, because we can discern the general issues raised and related arguments, perceive no prejudice, and recognize the importance of prompt decisions in involuntary termination cases, we address Father's claims.

discretion is found where there is a demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. ***It matters not that an appellate court might have reached a different conclusion***, as it is well-established that absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.

***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021) (internal citations and quotation marks omitted; emphasis added).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. ***See*** 23 Pa.C.S.A. §§ 2101-2938. Subsection 2511(a) provides grounds for the involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). ***See id.*** § 2511(b). This Court need only agree with one of the grounds set forth in subsection (a) to affirm, provided subsection (b) is also satisfied. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Father argues

he made "some progress" in achieving his SCP goals, gained employment, and had space in his apartment for Child. **See** Father's Brief at 6.[10]

The trial court disagreed, finding Father was aware of, but failed to comply with, his SCP objectives and "took no accountability for his actions as he blamed others for his failure to complete" those objectives. Trial Court Opinion, 1/4/24, at 25. The court concluded that, by establishing Father's continuing failure to cooperate with DHS and other service providers, "DHS met its burden by clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1),(2,),(5),(8)." **Id**. at 25.

The evidence demonstrates the trial court did not err in terminating Father's parental rights pursuant to Sections 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of

---

[10] To the extent Father raises an issue with respect to PLC, his challenge is not properly before us because Father appealed only from the trial court's termination decree, not the goal change order. **See Interest of S.S.**, 252 A.3d 681, 688 (Pa. Super. 2021) (recognizing that dependency proceedings and termination proceedings are two separate, distinct proceedings "with their own docket numbers, records, and divisions within the Court of Common Pleas."). Moreover, Father waived this claim because he did not raise it in his Pa.R.A.P. 1925(b) statement. **See M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017) (reiterating that issues not included in a concise statement of errors complained of on appeal and statement of questions involved are waived).

> relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * * * *
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To establish grounds for termination pursuant to Section 2511(a)(1) "[a] petitioner. . . must demonstrate by competent, clear and convincing evidence, '[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.'" ***In re Adoption of C.M.***, 255 A.3d 343, 363-64 (Pa. 2021) (citation omitted) (footnote omitted). While "parental duties" are undefined in the statute,

> our courts long have interpreted [them] in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life.

*L.A.K.*, 265 A.3d at 592 (internal citations and quotation marks omitted). Furthermore, "[f]ortitude is required, as a parent must act with 'reasonable firmness' to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities." *Id.* at 592 (citation omitted). *An incarcerated parent must "utilize available resources to continue a relationship" with his or her child*. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (emphasis added).

In assessing Section 2511(a)(1), trial courts should consider the entire history of the case and avoid applying the statutory six-month requirement mechanically. *See C.M.*, 255 A.3d at 364. However, the General Assembly's emphasis on the six months immediately preceding the filing of the termination petition indicates this time frame is the "most critical period for evaluation" of a parent's conduct. *L.A.K.*, 265 A.3d at 592.

Even where the evidence clearly shows a parent failed to perform parental duties for more than six months, the court will, in furtherance of the needs and welfare of children, examine the individual circumstances and any explanation offered by the parent to determine if that evidence clearly warrants permitting the involuntary termination of parental rights. *See L.A.K.*, 265 A.3d at 593. The totality of the circumstances includes consideration of the following:

> (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any,

including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to [s]ection 2511(b).

*Id*.

Here, in concluding that DHS established the statutory grounds to terminate Father's parental rights pursuant to section 2511(a), the trial court found:

> Ms. Palmer's testimony was credible regarding Father. Ms. Palmer had contact with Father after he was released from prison. The [SCP] objectives were established for Father[,] and he was made aware of the objectives by both phone and mail. Father was also made aware [] he had to comply with these [SCP] objectives. This [c]ourt found [] Father did not comply with any of his [SCP] objectives.
>
> Father himself testified [] he knew DHS was involved with [Child] and[,] despite that[,] made no efforts to contact DHS. Father never inquired about what he needed to do regarding reunification with [Child]. Father testified that he did not know he had to call DHS or CUA to inquire about [Child] upon his release from prison. The [c]ourt did not find Father's testimony credible regarding why he never reached out to DHS or CUA.
>
> Father has not consistently communicated with [Child] since prior to his arrest in December 2019[,] nor has he asked about her. At the [c]ourt hearing in April 2023, the [c]ourt gave Father an opportunity to provide mail and [to] contact [Child] through her therapist[,] but Father failed to take advantage of that opportunity. Father testified he wrote the letters, but[,] for a variety of reasons, he never sent them and did not want to send them. The [c]ourt never saw evidence of any letters and did not understand why Father would not send any letters or make contact with [Child] when given the opportunity.

Trial Court Opinion, 1/4/24, at 24-25 (record citations omitted).

As the record supports the trial court's determination of grounds for termination under section 2511(a)(1), we do not disturb it. Specifically, Ms.

- 10 -

Palmer testified unequivocally Father was aware of, but was noncompliant with, his SCP objectives aimed at reunification. **See** N.T., 6/22/23, at 28-30, 32-33, 42. Although Father disputed this, the trial court did not find his testimony credible, and we have no basis to disturb this finding. **See id.** at 64; Trial Court Opinion, 1/4/24, at 24; 28-29; **see also L.A.K.**, 265 A.3d at 591. Most important, the record fully supports the trial court's finding that Father has not had any contact with or maintained a relationship with Child, nor inquired with CUA or DHS about Child. **See** N.T., 6/22/23, at 34, 54-56, 59-62, 67,

Incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. **S.P.**, 47 A.3d at 828. The evidence demonstrates Father's settled purpose of relinquishing his parental claim to Child and refusal or failure to perform his parental duties for a period of more than six months. As such, the trial court's termination pursuant to section 2511(a)(1) is supported by competent evidence in the record, and we find no abuse of discretion. **See C.M.**, 255 A.3d at 358.

Having found sufficient grounds for termination pursuant to section 2511(a)(1), we must next determine whether termination was proper under section 2511(b). Section 2511(b) affords primary consideration to the developmental, physical, and emotional needs and welfare of the child. **See**

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Regarding the section 2511(b) best interest analysis, this Court has explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. The mere existence of an emotional bond does not preclude the termination of parental rights. Rather, the [Orphans'] court must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship . . . .
>
> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (internal citations, quotation marks, brackets, and indentation omitted).

The evaluation of a child's respective bonds is not always an easy task. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding

evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).

Furthermore, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. In weighing the bond considerations pursuant to section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. Children "are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

As our Supreme Court recently explained in *Interest of K.T.*, 296 A.3d 1085, 1113 (Pa. 2023),

> a court conducting the [s]ection 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond. We emphasize analysis of the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare.

The *K.T.* Court explained that the inquiry must consider and weigh evidence including, but not limited to, the child's need for permanency and length of time in foster care, whether the child is in a pre-adoptive home and bonded with foster parents, and whether the foster home meets all the child's needs "including intangible needs of love, comfort, security, safety, and stability." *Id*. (footnote omitted).

In determining that termination additionally served Child's developmental, physical, and emotional needs and welfare pursuant to section 2511(b), the court found that Child did not share a parent-child bond with Father but rather shared a parental bond with her foster mother. It cited Ms. Palmer's credible testimony about Child's close bond with pre-adoptive foster mother, with whom Child had lived for nearly two years, and who met all Child's daily needs. The court also cited Ms. Palmer's testimony that termination of parental rights would not detrimentally affect Child. The court credited Ms. Ciarrocchi's testimony that foster mother attends all therapy sessions at Child's request, Child wants to stay with foster mother and has not indicated a desire to return to Mother, and Child is afraid of Father. Ms. Cherniack concurred that Child understands the concept of adoption, understands the differences between PLC and adoption, and wants foster mother to adopt her. **See** Trial Court Opinion, 1/4/24, at 27-28.

Upon review, we discern no abuse of discretion. The record demonstrates Father and Child do not share a necessary and beneficial relationship pursuant to section 2511(b). **See K.T.**, 296 A.3d at 1113. Indeed, the record reveals that no **parent-child** bond exists between Father and Child, rather, Child is afraid of Father, and Child shares a parent-child bond and beneficial relationship with her foster mother and wants to be adopted.

Hence, the record corroborates the trial court's determination that termination of Father's parental rights best serves Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b). As such, we discern no abuse of discretion and do not disturb it.

For the foregoing reasons, we affirm the termination decree.

Decree affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/30/2024